STATE OF MISSOURI upon the information of ROY MCKITTRICK, Attorney General of the State of Missouri, Relator, v. WADE WILSON. —No. 38087.—166 S. W. (2d) 499.

Court en Banc, December 7, 1942.

*Roy McKittrick,* Attorney General, *Harry H. Kay* and *W. O. Jackson,* Assistant Attorneys General, for relator.

*Silvers & Silvers* for respondent.

488

*J. Francis O'Sullivan, Vance Julian, William O. Reeder* and *Claude W. McElwee, amicus curiae.*

DOUGLAS, J.—This is a proceeding in quo warranto instituted in this court by the attorney general as relator to determine respondent's right to hold the office of clerk of the circuit court of Henry County. The respondent was appointed to this office by the governor on April 4, 1942 and was commissioned "to fill the vacancy in the office."

At the general election in 1938 one John R. Wall was elected circuit clerk for the usual term of four years. He discharged the duties of his office until February 16, 1942 when he was inducted under the Selective Service Act into the Army of the United States as a private. He was sent to Fort Leavenworth, Kansas and later to Camp Roberts, California. After Wall's induction the circuit clerk's office was carried on by his deputy until April 7, 1942, when she turned over the office to respondent under threat of being held in contempt of of the circuit court.

The question for decision is whether Wall's induction into the army under the Selective Service Act resulting in his inability personally to perform the duties of his office caused him automatically to forfeit his office.

It is our judgment that Wall did not forfeit his office by being drafted into the military service of his country. This would be equally true if he had volunteered for the duration, particularly in view of our universal military service.

Respondent, urging otherwise, insists his only concern is for the public interest. We agree it is not only in the public interest but that it is demanded by the very principles for which we are at war that local self government must carry on. The courts must continue to function. At the same time adjustments must be made because of the tremendous demands on man power necessary to victory.

If the office of circuit clerk became vacant by Wall's entry into the army then, under a special statute pertaining to this office, the governor is empowered to fill such vacancy. Sec. 13284, R. S. 1939. This statute provides: "When any vacancy shall occur in the office of any clerk of a court of record by death, resignation, removal, refusal to act or otherwise, it shall be the duty of the governor to fill such vacancy. . . ." Wall did not resign. He did not refuse to act. He did not relinquish or abandon his office. While stationed at Fort Leavenworth he returned to Henry County from time to time and attended to the duties of the office. "An office presently filled cannot become vacant without removal either voluntary or involuntary." State v. McClinton, 5 Nev. 329. Wall has not voluntarily removed himself from his office. In fact the contrary has been indicated by him. No involuntary proceeding to remove him from office was had. Nor could such a proceeding be carried on over objection because of the Soldiers' and Sailors' Civil Relief Act so long as Wall is on active duty. 50 U. S. C. A., Appendix, sec. 501 et seq.

Section 13284 is not applicable unless the term "or otherwise" can be held to apply. This term follows the enumeration of specific instances which create a vacancy and must be construed under the rule of ejusdem generis. "It is a familiar rule of statutory construction that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase should be construed to refer to things of the same kind. 19 C. J., p. 1255." State ex rel. Goodloe v. Wurdeman, 286 Mo. 153, 227 S. W. 64. Plainly the term "or otherwise" does not cover the situation we are considering. No vacancy occurred because of this statute.

There is a general statute, Sec. 12828, R. S. 1939 which says: "Any person elected or appointed to any county, city, town or township office in this state, except such officers as may be subject to removal by impeachment, who shall fail personally to devote his time to the performance of the duties of such office, or who shall be guilty of any willful or fraudulent violation or neglect of any official duty, or who shall knowingly or willfully fail or refuse to do or perform any official act or duty which by law it is his duty to do or perform with respect to the execution or enforcement of the criminal laws of the state, shall thereby forfeit his office, and may be removed therefrom in the manner hereinafter provided." Because we find this general statute otherwise inapplicable, it is not necessary for us to decide whether it applies to a circuit clerk in view of the special statute above mentioned expressly covering that office. This general statute by its terms is essentially one for the removal of officers. It is included under an article entitled "Removal of County, City, Town and Township Officers." Other sections in the same article provide for the making and filing of a complaint, the trial, and the judgment of ouster.

Unless an office is abandoned or relinquished an officer is entitled to a trial on the charge of failing personally to devote his time to the performance of his duties. Such failure may be excusable. Speaking of the statutory duties to be performed by a sheriff this court has said: "It is his duty under the law to be and remain in attendance upon the circuit court of his county when the same was in session, . . . *unless by other pressing official duties, or by illness, or some other lawful reason he was prevented therefrom.*" (Our emphasis.) State v. Yager, 250 Mo. 388, 157 S. W. 557. Verily a public office is held on the implied condition that the officer will perform the duties belonging to it. However, Mechem in his work on Public Officers points out that generally it is a willful refusal to perform the duties of an office which works a forfeiture so that a judgment of ouster is necessary. The statutes of some states specifically require such a judgment.

We have held in a case similar to this where a circuit judge was called into ▆▆▆ active military service that Art. II, Sec. 18 of our Constitution, "that no person elected or appointed to any office . . . shall hold such office without personally devoting his time to the performance of the duties to the same belonging," was designed to prevent "farming out" the performance of the duties of an office to another for the convenience or profit of the officer and did not apply to the situation we were there considering. State ex rel. McGaughey v. Grayston, 349 Mo. 700, 163 S. W. (2d) 335. Consequently, such constitutional inhibition is not apposite here.

Regardless of statutory provisions respondent insists that Wall legally vacated his office by going away to war. This court has already said there is no technical or peculiar meaning to the word "vacant." It means empty, unoccupied, as applied to an office without an incumbent; an existing office without an incumbent is vacant. An incumbent of an office is one who is legally authorized to discharge the duties of that office. State ex rel. Sanders v. Blakemore, 104 Mo. 340, 15 S. W. 960. In the last war the county attorney of Saline County, Texas was drafted. It was claimed his office thereby became vacant. The court held otherwise. Hamilton v. King. 206 S. W. 953.

We come to the conclusion that there is nothing in the law, constitutional, statutory or common, which requires us to hold that Wall has forfeited his office by becoming a soldier in the army. Therefore, the office was not vacant and the appointment of respondent was unauthorized.

The court has received great aid from the briefs of relator and respondent and from the brief of the Committee on War Work of the Missouri Bar Association as amicus curiae. However, decisions from other states are not particularly helpful because of different statutory enactments on the subject of public officers. Different local and

national conditions have also influenced such decisions. Some text-writers have set forth the principle that voluntary enlistment in the United States Army vacates a public office. That pronouncement is based on an Indiana decision rendered during the Civil War. State v. Allen, 21 Ind. 516. It is an historical fact that in the Civil War enlistments in the army were obtained with great difficulty, especially in the Federal Army, and finally military service was made compulsory over stiff opposition. This condition happily does not now exist, certainly not since Pearl Harbor.

We can readily anticipate that local inconvenience can result where an office-holder goes to war. It seems to us that some provision might be made, where there is none at present, for a substitute, an officer locum tenens, to fill the office while the regular officer is performing the greater duty of defending his country. Wounded soldiers are already returning to civilian life. Supposing there is an office-holder among them, would there be anyone who would not agree but that he should serve out his term of office if he were able? So it should be with every soldier who has the good luck to return. (We use the term soldier to include all service men.)

However, the matter of providing for substitute officers is for the attention of the Legislature which will convene within a month. The Supreme Court of Florida recently held constitutional an act which secured to all state and county officers their tenure in case they were called to the armed forces and which authorized the governor to designate another to perform the duties of the office during such absences but not longer than the remainder of the term. Re Advisory Opinion (Fla.), 8 So. (2d) 26, 140 A. L. R. 1481. This is in line with our national policy relating to public employees as expressed in Sec. 8 (b) of the Selective Training and Service Act which provides that if any inductee was in the ''employ of any state or political subdivision thereof, it is hereby declared to be the sense of the Congress that such person should be restored to such position or to a position of like seniority, status, and pay.'' There is a similar provision for the benefit of private employees and employees of the United States Government. We believe our patriotic public officers deserve the same consideration.

Judgment of ouster is hereby entered against respondent. All concur except *Hays* and *Gantt, JJ.,* absent.